**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DOUGLAS ANDERSON, individually and on behalf of similarly situated individuals, | ) | |
| *Plaintiff*, | ) | Case No. 24-cv-03684 |
| v. | ) | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) | Hon. Sunil R. Harjani |
| *Defendant*. | ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

I. APPS Does Not Meet HIPAA's Definition of "Health Care Provider." ............................ 1

II. Plaintiff's Citations to GIPA Employment Law Cases Are Inapposite. .............................. 5

III. The Response Fails to Undermine the Structural Evidence in Section 20(b). ...................... 6

CONCLUSION ................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basden v. OSF Healthcare System, et al.*,
Case No. 23-CH-07646 (Ill. Cir. Ct. Mar. 11, 2024) ....5

*Beard v. City of Chicago*,
2005 WL 66074 (N.D. Ill. Jan. 10, 2005) ....4

*Chester Cnty. Off. of Coroner v. Keel*,
311 A.3d 57 (Pa. Commw. Ct. 2023) ....3

*Davis v. Jumio Corp.*,
2023 WL 2019048 (N.D. Ill. 18 Feb. 14, 2023) ....3

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
256 F.R.D. 151 (E.D. Pa. 2009) ....2

*In re J.R.*,
2015 WL 10352744 (N.J. Super. Ct. App. Div. Feb. 24, 2016) ....3

*Michigan Ave. Nat. Bank v. Cnty. of Cook*,
732 N.E.2d 528 (Ill. 2000) ....2

*Miller v. Allstate Fire & Cas. Ins. Co.*,
2009 WL 700142 (W.D. Pa. Mar. 17, 2009) ....3

*Reynolds v. State Farm Life Ins. Co., et al.*,
Case No. 2023-LA-000465 (Ill. Cir. Ct. June 5, 2024) ....1

*State v. Friedman,*
735 N.W.2d 194 (Wis. Ct. App. 2007) ....3

*Sullivan v. All Web Leads, Inc.*,
2017 WL 2378079 (N.D. Ill. June 1, 2017) ....4, 5

*Weller v. Sagility, LLC*,
Case No. 23-cv-15626, Dkt. 19 (N. D. Ill. Mar. 25, 2024) ....5

**Statutes**

Health Insurance Portability and Accountability Act, 42 U.S.C. 1320d *et seq.* .... *passim*

Genetic Information Privacy Act, 410 ILCS 513/1 *et seq.* .... *passim*

42 U.S.C. § 1395x ....3

225 ILCS 60/49 .......... 2

410 ILCS 513/20 .......... *passim*

410 ILCS 513/25 .......... 5

**Regulations**

45 C.F.R. § 160.103 .......... *passim*

**Other Authorities**

Webster's Third New International Dictionary (1993) .......... 2, 6

Jay Wexler, *Fun with Reverse Ejusdem Generis*, 105 Minn. L. Rev. 1 (2020) .......... 6, 7

Illinois's Genetic Information Privacy Act ("GIPA") does not apply to life insurers.[1] Indeed, the Circuit Court for Kane County, Illinois recently dismissed with prejudice a nearly-identical complaint brought against State Farm, expressly "find[ing] that the statute does not apply to life insurance." *See Reynolds v. State Farm Life Ins. Co., et al.*, Case No. 2023-LA-000465 (Ill. Cir. Ct. June 5, 2024) (order attached hereto as Exhibit A).

In its opening brief, Defendant similarly showed that GIPA's plain language and legislative history, along with Plaintiff's life insurance application, conclusively establish that he has no GIPA claim. Unable to dispute this, in his Memorandum of Law in Opposition to Defendant's Motion to Dismiss the First Amended Complaint (the "Response") (Dkt. 24), Plaintiff mischaracterizes Defendant's arguments and the statutory text and case law interpreting it, demonstrating that his attempt to expand GIPA to cover life insurers cannot survive a reading of the statute's plain terms. Dismissal with prejudice is appropriate here for the same reasons as in *Reynolds*.

## ARGUMENT

### I. APPS Does Not Meet HIPAA's Definition of "Health Care Provider."

As Plaintiff concedes, purported "genetic information" that was not "created or received by a health care provider" is not protected by Section 20(b). *See* Dkt. 13 ("Op. Br.") at 6–8. Here, because no health care provider is involved in the life insurance application process, Section 20(b) is inapplicable.

In his Response, Plaintiff offers two unconvincing rejoinders. First, Plaintiff alleges that APPS, the vendor who collected some information from Plaintiff for the life insurance application, is a health care provider because it purportedly "provid[es] diagnostic services to assess the

[1] There is one exception, not applicable here. *See* 410 ILCS 513/20(e) (relating to direct-to-consumer commercial genetic testing).

physical condition of an individual." Resp. at 4. That is incorrect. Nothing about APPS's interaction with Plaintiff was "diagnostic," a term meaning "adapted to or used for the furthering of diagnosis; employing or marked by the methods of diagnosis; concerning diagnosis." Webster's Third New International Dictionary 622 (1993). The Illinois Supreme Court has held that the term "diagnosis" is unambiguous and means the "art or act of identifying a disease from its signs and symptoms.'" *Michigan Ave. Nat. Bank v. Cnty. of Cook*, 732 N.E.2d 528, 538 (Ill. 2000) (quoting *id.*). Plaintiff does not explain how APPS's actions fit this definition. He does not allege that he suffered from any unidentified disease at the time of the exam. *See* Op. Br. at 4. He claims to have disclosed "family medical history," but family medical history is neither a sign nor a symptom of a disease—it is a risk factor. Plaintiff also does not allege the credentials of the APPS representative he spoke with. *Cf.* Dkt. 14-1 at 11–12 (section of Plaintiff's life insurance application titled "Report by Examining Medical Doctor" is left blank, and examiner's name does not include either a "Dr." prefix or any kind of suffix). In Illinois, only a physician may provide diagnoses. *See* 225 ILCS 60/49 (making it a crime for anyone other than a licensed physician to "diagnose[] or attempt[] to diagnose . . . any ailment or condition"). Even if Plaintiff had alleged that the APPS representative was a doctor—and he has not—that would still be insufficient to make APPS a "health care provider." *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 155 (E.D. Pa. 2009) (holding that doctors who provided diagnoses "to be relied upon in initiating an asbestos personal injury suit" were not "health care providers" under HIPAA).

Second, Plaintiff attempts to bolster his argument that APPS provides "health care" by arguing that its agent allegedly "assess[ed]" the "physical . . . condition" of an "individual" in service of an undefined "diagnostic" goal. Resp. at 4–5 (citing 45 CFR § 160.103). But courts have repeatedly rejected similar attempts to broaden the definitions of "health care" and "health care

provider" set forth in 45 CFR § 160.103. *See, e.g., In re J.R.*, 2015 WL 10352744, at *5 (N.J. Super. Ct. App. Div. Feb. 24, 2016) (holding that a state licensing board for nurses that performed mental and physical exams of applicants is not a "health care provider"); *State v. Friedman,* 735 N.W.2d 194, at *3 (Wis. Ct. App. 2007) (holding forensic blood test to determine blood alcohol content is not "health care"); *Miller v. Allstate Fire & Cas. Ins. Co.*, 2009 WL 700142, at *3 (W.D. Pa. Mar. 17, 2009) (holding consultant that employs doctors to review medical records in "managing litigation related to medicine and healthcare" is not a "health care provider" because it does not provide "actual medical services"); *Chester Cnty. Off. of Coroner v. Keel*, 311 A.3d 57, at *2 n. 6 (Pa. Commw. Ct. 2023) (opining that a coroner does not appear to be a "health care provider"). Plaintiff's mere emphasis of the word "medical," Resp. at 4, does not save his claim, because "medical" personnel can undertake "medical" activities without meeting HIPAA's exacting definition of "health care provider."[2]

Lacking allegations that would support a conclusion that APPS is a health care provider under HIPAA, Plaintiff argues that the question is a fact issue, supposedly not appropriate to decide on a motion to dismiss. Resp. at 6. But the case Plaintiff cites to support this proposition is wholly inapposite. In *Davis v. Jumio Corp.*, the court declined to dismiss a BIPA complaint *based on an affirmative defense* without the benefit of discovery. 2023 WL 2019048, at *4 (N.D. Ill. 18 Feb. 14, 2023). If the face of a complaint does not provide a basis for an affirmative defense, discovery is appropriate. By contrast, here, Section 20(b)'s requirement that genetic information be created by a "health care provider" is an element of Plaintiff's prima facie case. If the face of the FAC

[2] For his part, Plaintiff concedes that the definitions in 42 U.S.C. §§ 1395x(s) and (u) are "not necessary" to his claim. Resp. at 5. Rather, Plaintiff seeks to identify APPS as an "organization who furnishes, bills, or is paid for health care in the normal course of business." *Id.* (citing 45 CFR § 160.103). The Court can resolve this issue, then, with the common-sense determination that a life insurance underwriting exam is not a form of "health care."

does not support an element of its only claim, Plaintiff has failed to state a claim *by definition*. Dismissal—not discovery—is the appropriate result in such case.

Plaintiff's half-hearted attempts to distinguish the analogous cases cited in Defendant's opening brief (Resp. at 5–6) also fall flat. To start, in *Beard v. City of Chicago*, 2005 WL 66074 (N.D. Ill. Jan. 10, 2005), the court determined that a fire department likely was not a "health care provider" based solely on the types of services the department's medical section provided. In particular, the court examined whether such services were for treatment—with no reference to whether the department as a whole was generally "in the business" of health care. *See id.* at *2 (opining that "the Department's medical section" does not "actually provide[] medical care" because it "evaluates medical conditions . . . not for the purpose of treatment"). Plaintiff's attempt to separate APPS from Defendant (which, as an insurer, is clearly not a health care provider) to justify categorizing APPS as a health care provider has no basis in the *Beard* decision. In that case, the fact that the fire department's medical personnel were internal employees rather than external contractors had no bearing on the types of services they provided. What matters is that APPS did not treat Plaintiff; its agent simply "evaluated [Plaintiff's] medical conditions." Accordingly, like the fire department in *Beard*, APPS is not a health care provider.

As to *Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079 (N.D. Ill. June 1, 2017), Plaintiff raises only one distinction—that it involved the TCPA. Resp. at 6. But Plaintiff overlooks the *Sullivan* court's direct interpretation of HIPAA's definition of "health care" that is common to both the TCPA regulations *and* GIPA. *See Sullivan*, 2017 WL 2378079 at *3 (observing that the FCC's "health care rule" under the TCPA "speaks in HIPAA-defined terms" before quoting the definition of "health care" from 45 C.F.R. § 160.103).[3] Neither the calls in *Sullivan* nor the life

[3] Plaintiff's demand for discovery to test "Defendant's self-serving claims that [APPS] is not a health care provider," Resp. at 6, is baseless. Defendant has not pulled a "self-serving claim" from

insurance application here were "health care"; both merely "represent[ed] [ ] effort[s] to inaugurate a new relationship between an individual and a[n] [ ] insurance *issuer.*" *See id.* at *5 (emphasis in original). Accordingly, Plaintiff's GIPA claim fails.

**II. Plaintiff's Citations to GIPA Employment Law Cases Are Inapposite.**

Plaintiff is similarly mistaken in attempting to draw parallels between this case and the recent denials of motions to dismiss in *Weller v. Sagility, LLC*, Case No. 23-cv-15626, Dkt. 19 (N.D. Ill. Mar. 25, 2024) and *Basden v. OSF Healthcare System, et al.,* Case No. 23-CH-07646 (Ill. Cir. Ct. Mar. 11, 2024). *See* Resp. at 11–12, 14. Those cases only involve GIPA's employment provisions, which differ significantly from its insurance provisions. And neither decision resolved a statutory interpretation dispute because employers (unlike insurers) are clearly covered by the relevant provision. Specifically, the section purportedly violated in *Weller* and *Basden* prohibits employers from:

> directly or indirectly . . . solicit[ing], request[ing], requir[ing] or purchas[ing] . . . genetic information of a person or a family member of the person . . . as a condition of employment.

410 ILCS 513/25(c)(1). Unlike Section 20(b), 410 ILCS 513/25(c)(1) is not limited to "protected health information that is genetic information," so the plaintiffs in those cases did not have to plead that genetic information was created or received by a health care provider. And GIPA's employment provisions prohibit even *requesting* the information, while Section 20(b) prohibits only its *use or disclosure*. As a result, the answers (or lack thereof) to the questions of the *Weller* and *Basden* plaintiffs were irrelevant; in the employment context, simply asking the questions could violate GIPA. But, here, Plaintiff cannot plausibly plead that there was "use or disclosure"

---

the air; rather, Defendant's argument is based on the activity of APPS's agent, as described in the FAC and Plaintiff's own life insurance application, measured directly against the definition of "health care" in 45 C.F.R. § 160.103.

of protected genetic information in violation of Section 20(b). *See* Op. Br. at 14–15. Because a health care provider did not ask the questions, and Plaintiff provided no genetic information in response, Plaintiff's GIPA claim should be dismissed.

**III. The Response Fails to Undermine the Structural Evidence in Section 20(b).**

As discussed in Defendant's opening brief, the plain language of Section 20(b) does not apply to life insurance. Section 20(b) prohibits the use or disclosure of "protected health information that is genetic information for underwriting purposes" and defines "underwriting purposes" in four subparts, which, when read together, demonstrate that Section 20(b) is limited to health insurance. *See* Op. Br. at 8–9. Plaintiff fails to rebut Defendant's structural argument about the implicit limitation that Section 20(b)'s catchall clause imposes on 410 ILCS 513/20(b)(1)–(3).

At base, Defendant's argument about Section 20(b)'s catchall clause relies on the definition of the word "other," as used in the clause, as "being the ones **distinct from** the one or **those first mentioned** or understood." Webster's 1598 (emphasis added). If the first three subparts of Section 20(b) were not "activities related to . . . health insurance or health benefits," then 410 ILCS 513/20(b)(4) would have no "first mentioned" referents, leaving the word "other" without meaning. This common-sense interpretation—"the only way to give meaning to the word 'other'"—often goes unnamed, but courts sometimes call it "reverse *esjudem generis*." *See* Jay Wexler*, Fun with Reverse Ejusdem Generis*, 105 Minn. L. Rev. 1, 20 (2020).

In response to Defendant's argument, Plaintiff opposes the application of reverse *esjudem generis* here, attempting to force a limitation onto it that is not found in the case law. Specifically, Plaintiff claims that the canon does not apply where there are "separate and unique provisions like each of the subsections of 20(b)(1)–(4)." Resp. at 8. This limitation is wholly imaginary. The canon simply "states that when a statute includes a list of terms and a catch-all phrase, the terms in the

list are limited to those that are consistent with the catch-all phrase." Wexler, 105 Minn. L. Rev. at 2. The statutory list does not require a particular format for the canon to apply, and Plaintiff cites no authority for that idea.[4]

As demonstrated in Defendant's opening brief, Section 20(b)'s language is especially well-suited to the application of reverse *esjudem generis* for two reasons. *First*, "When the catch-all term is quite precise, the inference that the legislature intended the enumerated terms to be subject to the catch-all's limits will be rather strong." *Id.* at 3. The phrase "activities related to the creation, renewal, or replacement of a contract of health insurance or health benefits" from 410 ILCS 513/20(b)(4) is about as precise as residual clauses get. *Second*, the case for reverse *esjudem generis* is stronger "the more it is generally known that an enumerated item contains a subset that would not be covered if the catch-all is read to limit the item." Wexler, 105 Minn. L. Rev. at 22–23. As Plaintiff himself points out, it is commonly understood that terms like "coverage," "eligibility," and "underwriting" apply to all types of insurance, and not just health insurance. Resp. at 7–8. That is, it is "generally known" that the first three subparts of Section 20(b)'s definition of "underwriting purposes" would not cover any insurance other than health insurance "if the catch-all is read to limit" them. Thus, the presumption that Section 20(b)'s catchall was intended to shrink the scope of the preceding subparts is particularly strong. Because the statute's structure confirms that its application is limited to "activities related to . . . health insurance or health benefits," Plaintiff's claim fails.

[4] Even if reverse *esjudem generis* applied only to lists contained in a single "sentence," as Plaintiff proposes (Resp. at 8), Section 20(b)'s four-part definition of "underwriting purposes" *is* structured as a single sentence, starting with "For purposes of this Section" and ending with the catchall clause. *See* 410 ILCS 513/20(b).

## CONCLUSION

For the foregoing reasons, as well as those articulated in Defendant's opening brief, Defendant respectfully requests that the Court dismiss the FAC with prejudice.

Dated: July 19, 2024

Respectfully submitted,

AMERICAN GENERAL LIFE
INSURANCE COMPANY

/s/ Debra Bogo-Ernst

Debra Bogo-Ernst
Amanda S. Amert
WILLKIE FARR & GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654
Tel: (312) 728-9062
Fax: (312) 728-9199
dernst@willkie.com
aamert@willkie.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 19, 2024, the foregoing *Defendant's Reply Memorandum of Law in Support of Motion to Dismiss the First Amended Complaint* was electronically filed with the Clerk of Court via CM/ECF, which will provide notification of such filing to all Counsel of Record.

/s/ Debra Bogo-Ernst
*Counsel for Defendant*